# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| COLLENE COLLIER, KAREN GROCE and BARRY KUSNICK, on behalf of themselves and all others similarly situated, ) ) ) ) )| |
|      Plaintiffs, ) )| |
| v. ) )| Case No. 3:18-cv-00331 Judge Aleta A. Trauger |
| MEDCARE INVESTMENT CORPORATION d/b/a MEDCARE INVESTMENT FUNDS, CARDIOVASCULAR CARE GROUP, INC., and CCG OF LOUISIANA, LLC, ) ) ) ) ) )| |
|     Defendants. )| |

## MEMORANDUM

Before the court is the Motion to Transfer Venue and Request for Expedited Relief (Doc. No. 20), filed by defendants MedCare Investment Corporation d/b/a MedCare Investment Funds ("MedCare"), Cardiovascular Care Group, Inc. ("CCG, Inc."), and CCG of Louisiana, LLC ("CCG, LLC") (together with CCG, Inc., "CCG"), seeking transfer of this action to the United States District Court for the Eastern District of Louisiana, to be referred to the United States Bankruptcy Court for the Eastern District of Louisiana under 28 U.S.C. § 1404(a) and, alternatively, under the judicially created "first to file" doctrine. The plaintiffs have filed their Opposition to the motion. (Doc. No. 26.) With the court's permission, both a Reply (Doc. No. 29) and Sur-reply (Doc. No. 36) have also been filed.

For the reasons set forth below, the court will transfer this matter based on the first-to-file rule, without reaching the question of whether transfer under § 1404 is warranted. The request

for expedited consideration will be denied as moot.

## I.    BACKGROUND

Plaintiffs Collene Collier, Karen Groce, and Barry Kusnick, represented by local counsel and by attorneys Jack Raisner and René S. Roupinian of the New York firm of Outten & Golden LLP ("Outten & Golden"), filed their Class Action Complaint in this court on April 2, 2018, asserting claims for relief under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, against MedCare and CCG, the parent entities of the Louisiana Medical Center and Heart Hospital, LLC, a/k/a Louisiana Heart Hospital, LLC ("LHH") and LMCHH PCP, LLC ("LMCHH") (together with LHH, the "hospital") that formerly employed the plaintiffs in Lacombe, Louisiana. The plaintiffs allege that MedCare and CCG, Inc. maintain a place of business in Nashville, Tennessee and that CCG, LLC "was a shell company of [CCG, Inc.] created by MedCare to acquire and hold" the hospital. (Am. Class Action Compl., Doc. No. 25 ¶ 14.) The plaintiffs assert that venue in this jurisdiction is appropriate under the WARN Act's venue provision, 29 U.S.C. § 2104(a)(5).

As relevant here, the WARN Act forbids an employer of 100 or more full-time employees to "order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). The plaintiffs allege that the defendants in this action, as parent employers, qualify as their "employer" under the WARN Act, that the defendants made the decision to close the hospital and put it into Chapter 11 bankruptcy, and that the decision to close the hospital resulted in the termination of the plaintiffs' employment, as well as the termination of their health insurance and other benefits, without the sixty days' advance notice required by the WARN Act. The vast majority of the factual allegations in the Amended Class Action Complaint concern the question of whether the

defendants qualify as the plaintiffs' "employer."

The plaintiffs seek class certification and a judgment in favor of each affected employee against the defendants equal to the sum of their unpaid wages, accrued holiday and vacation pay, health and life insurance, pension and 401(k) contributions and other ERISA benefits for the sixty days that would have been covered if they had received adequate notice of the closure of the hospital, in addition to the cost of any medical expenses incurred following the loss of employment that took place within the sixty-day notice period.

The defendants filed their Motion to Transfer on April 12, 2018, arguing that this case should be transferred to the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice." In the alternative, the defendants argue that the case should be transferred under the first-to-file doctrine, which provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). They accuse the plaintiffs of "blatant . . . forum shopping" and intentionally failing to apprise the court of the existence of parallel proceedings in the Eastern District of Louisiana or of the fact that all but 100 former hospital employees previously opted into a settlement ("Employee Settlement") in the those proceedings, the terms of which also disposed of all claims against the defendants named in this action. (Doc. No. 21, at 18.)

Just before filing their Opposition to the Motion to Transfer, the plaintiffs filed their Amended Class Action Complaint, in which they expressly acknowledge that the Bankruptcy Court for the Eastern District of Louisiana had entered an order approving a Chapter 11 Plan providing for a settlement amount to be distributed to approximately 600 former hospital

employees "in return for the release of all of their claims, including their WARN Act claims against" the defendants in this action. (Doc. No. 25 ¶ 70.) They clarify, however, that 103 individuals, including the plaintiffs, opted out of the Employee Settlement and that the named plaintiffs now bring their claims in this court on their own behalf and on behalf of the other 100 "similarly situated, non-settling employees." (*Id.*)

In their Opposition, the plaintiffs vigorously dispute that the § 1404(a) factors weigh in favor of transfer and further argue that application of the first-to-file doctrine in this case would be inequitable. In the Reply and Sur-reply, the parties return to these themes. The defendants also argue that, in filing this lawsuit, the plaintiffs deliberately ignored the intervention deadline established in the Louisiana lawsuit and that they have misstated the record in the Louisiana lawsuit. In their Sur-reply, the plaintiffs object that the defendants mischaracterize the record and have introduced evidence that was not incorporated into their original motion documents.

## II.     DISCUSSION

### A.     The First-to-File Rule

A motion to transfer venue under the first-to-file doctrine is distinct from a motion to transfer under 28 U.S.C. § 1404(a). The Sixth Circuit has recognized the "first-to-file rule" as a "well-established doctrine that encourages comity among federal courts of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x 433, 437 (6th Cir. 2001). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz*, 814 F.3d at 789 (internal quotation marks and citation omitted).

The rule is not strict, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004), and it is within the discretion of the district court to decline to enforce it "where equity so demands,"

such as when the record contains evidence of forum shopping, bad faith, or inequitable conduct. *Zide Sport Shop*, 16 F. App'x at 437. When the first-to-file rule is properly raised, a district court presiding over the second-filed case has many options for proceeding, including dismissing the case without prejudice, staying the suit before it, allowing both suits to proceed, or, in some cases, enjoining the parties from proceeding in the other suit. *Baatz*, 814 F.3d at 793.

The rule is "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz*, 814 F.3d at 789; *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). This rule "encourages comity among federal courts of equal rank." *Zide Sport Shop*, 16 F. App'x at 437; *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir.1985). It also conserves judicial resources by minimizing duplicative or piecemeal litigation and protects the parties and the courts from the possibility of conflicting results. *Baatz*, 814 F.3d at 789. An action is considered duplicative under this doctrine when the "determination in one action leaves little or nothing to be determined in the other." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (internal citations omitted). A court ruling on a motion to transfer under the first-to-file doctrine can consider convenience in its decision, but it should focus its analysis on comity and economy between courts with cases that have substantially similar issues. *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 868 (S.D. Ohio 2007).

The Sixth Circuit has recognized a "paucity of Sixth Circuit case law explaining how to apply the first-to-file rule," but that "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625

(9th Cir. 1991)). If these factors support application of the rule, the court must also evaluate whether equitable considerations, "such as evidence of inequitable conduct, bad faith, anticipatory suits, [or] forum shopping, merit not applying the first-to-file rule in a particular case. *Id.* (internal quotation marks and citation omitted).

**B.       Chronology of Events**

The Sixth Circuit has instructed that "[t]he dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *Id.* at 790. There is no dispute that the first-filed lawsuit in Louisiana, as discussed below, predates the filing of the original Class Action Complaint in this court by more than a year. This factor obviously favors transfer, assuming the other factors are met. However, because the chronology of the events in Louisiana also sheds light on the other relevant factors, some detail regarding those proceedings is warranted.

On January 30, 2017, the two entities that make up the hospital, LMCHH and LHH ("Debtors") commenced voluntary cases for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. These cases were consolidated for joint administration on February 3, 2017 and transferred to the United States Bankruptcy Court for the Eastern District of Louisiana ("Bankruptcy Court") on February 14, 2017. *See In re LMCHH PCP, LLC / In re Louisiana Med. Ctr. & Heart Hosp., LLC* ("Bankruptcy Case"), No. 17-10353 (Bankr. E.D. La. Feb. 3, 2017) (Order granting motion for joint administration of related cases, B'cy Doc. No. 38[1]).

On February 5, 2017, plaintiffs Barbara Kusnick and Rose Delaney (the "Kusnick plaintiffs"), represented by Outten & Golden, on their own behalf and on behalf of all other

---

[1] Documents filed in Bankruptcy Case No. 2:17-bk-10353 will be referred to herein by their docket number in that case, denoted as "B'cy Doc. No. ___."

similarly situated former employees of the Debtors, filed an adversary proceeding against the Debtors in the Bankruptcy Court ("the Kusnick Adversary Proceeding"). *Kusnick v. LMCHH PCP LLC*, Adv. Pro. No. 2:17-ap-01021 (Bankr. E.D. La. Feb. 15, 2017) (Class Action Adv. Pro. Compl. for Violation of WARN ACT 29 U.S.C. § 2101, *et seq.*, Kusnick A.P. Doc. No. 1.[2]) Just days later, the Kusnick plaintiffs filed an Amended Class Action Adversary Proceeding Complaint also naming MedCare, CCG, Inc., and CCG, LLC, the defendants in this case, as defendants. (Kusnick A.P. Doc. No. 25.)

It is the Kusnick Adversary Proceeding that constitutes the first-filed action whose parties and issues are to be compared to those of the Tennessee case for purposes of the first-to-file rule. In that case, the Kusnick plaintiffs assert WARN Act claims under a single-employer theory, as well as state law claims for breach of contract for severance pay and unpaid wages, including accrued holiday pay, vacation pay and other benefits, and seeking allowance of all their claims as first priority administrative expenses or, alternatively, wage priority status. (Kusnick A.P. Doc. No. 10.) To be clear, the Kusnick plaintiffs sought recovery on behalf of a class for WARN Act liability from the Debtors, CCG, and MedCare, and severance and paid time-off liability from the Debtors alone.

On February 24, 2017, another set of former employees purporting to bring claims on their own behalf and on behalf of a putative class of similarly situated former employees of the Debtors, represented by other counsel, filed an adversary proceeding likewise asserting WARN Act and state law claims for severance pay and paid time off/paid days off ("PTO/PDO") and seeking priority status. *King v. LMCHH PCP, LLC*, Adv. Pro. No. 2:17-ap-01024 (Bankr. E.D. La. Feb. 27, 2017) (the "King Adversary Proceeding") (Class Action Adv. Pro. Compl. for

___

[2] Documents filed in Adversary Proceeding No. 2:17-ap-01021 will be referred to herein by their docket number in that case, denoted as "Kusnick A.P. Doc. No. ___."

Violation of WARN Act, Breach of Contract, Unpaid Wages, and Declaratory Judgment, Doc. No. 1.)

On June 29, 2017, Debtors and the Official Committee of Unsecured Creditors (collectively, the "Plan Proponents") filed a motion (B'cy Doc. No. 419) seeking entry of an order approving their Joint Disclosure Statement (B'cy Doc. No. 417) with respect to their Chapter 11 Joint Plan of Liquidation (B'cy Doc. No. 416), which, among other things, incorporated a proposed settlement of all the individual claims of all former employees of the Debtors against the Debtors *and* CCG and MedCare in exchange for payment in the aggregate amount of $2,727,163.56. (*See* B'cy Doc. Nos. 416, at 30 & 417, at 8.)

On July 13, 2017, the Kusnick plaintiffs' attorneys, Outten & Golden, were appointed as interim lead class counsel, over the opposition of the King plaintiffs. (Kusnick A.P. Doc. No. 70.) The Kusnick plaintiffs filed their Motion for Class Certification and Related Relief in their Adversary Proceeding shortly thereafter, on July 13, 2017. (Kusnick A.P. Doc. No. 71.) The King plaintiffs almost immediately filed an Ex Parte Motion and Incorporated Memorandum to Continue Hearing on Motion for Class Certification, arguing that the motion was premature because, under the Amended Joint Plan and proposed Employee Settlement, all employees were being offered the opportunity to settle all of their claims. (Kusnick A.P. Doc. No. 85.) The Bankruptcy Court granted the motion and continued the hearing to October 30, 2017. (Kusnick A.P. Doc. No. 87.)

Meanwhile, on August 1, the Plan Proponents filed an Amended Joint Plan of Liquidation and accompanying Disclosure Statement (B'cy Doc. Nos. 468 & 470, as revised by 512), which incorporated an Amended Proposed Employee Settlement and offered $3,800,000 in exchange for such settlement. The Amended Joint Plan proposed to resolve all "Employee

Claims," defined to include WARN Act claims as well as all state law wage payment claims, against the Debtors and their parent entities, in order to avoid what was otherwise "anticipated to be expensive and protracted litigation associated with the Employee Claims, especially the Uncertified WARN Class Actions." (B'cy Doc. No. 470, at 32.) The proposed Employee Settlement would effect a "compromise and settlement of each and every Claim that an Employee may have against the Debtors and any Employee Released Parties in exchange for the payment to the Employee of the Employee Settlement Amount." (*Id.*) The "Employee Released Parties" expressly included CCG and MedCare and each of their affiliates, subsidiaries, shareholders, partners, members, agents, advisors, officers, etc. (B'cy Doc. No. 470, at 10 ¶ 1.36.) On August 4, 2017, the Bankruptcy Court entered an Order approving the Disclosure Statement describing the Amended Joint Plan and setting dates for objections thereto. (B'cy Doc. No. 485.)

On August 17, 2017, counsel for the Kusnick plaintiffs—the same attorneys from the Outten & Golden law firm who represent the plaintiffs in this court—filed a sworn Notice of Representation under Rule 2019 of the Federal Rules of Bankruptcy Procedure, representing to the Bankruptcy Court that they represented 235 former employees of the Debtors. (B'cy Doc. Nos. 504, 504-1.) Among many others, counsel filed proofs of claim on behalf of all three named plaintiffs in this case. (*See* Doc. Nos. 20-4, 20-5.)[3]

On September 1, 2017, the Kusnick plaintiffs filed a motion in the Bankruptcy Case to establish a $10 million Disputed Employee Claims Reserve, subject to reduction for the amounts paid to employees who do not opt out of the Plan settlement. (B'cy Doc. No. 517.) That motion was later resolved by agreement. (*See* Order, B'cy Doc. No. 560.)

---

[3] The named plaintiffs' proofs of claim do not assert WARN Act claims; they assert PTO/PDT and severance pay claims. (Doc. No. 20-5.)

On September 18, 2017, the Kusnick plaintiffs filed their Objection to Confirmation of the Joint Amended Plan of Liquidation, objecting on numerous bases, including that the Plan Proponents were using the Plan as "an end run around Rule 23" and to obtain an "impermissible third party release for MedCare and CCG who are also defendants in the Kusnick Plaintiffs' WARN Act adversary [proceeding]." (B'cy Doc. No. 533, at 9.)

Following a Confirmation Hearing conducted on September 25, 2017, at which the Bankruptcy Court heard evidence concerning the Employee Settlement and the negotiations that led to it, the Bankruptcy Court entered an Order Confirming Amended Joint Chapter 11 Plan, along with Findings of Fact and Conclusions of Law Regarding the Confirmation of the Plan Proponents' Amended Joint Plan of Liquidation ("Findings of Fact"). (B'cy Doc. Nos. 566, 567.) Besides confirming the Amended Joint Plan, the Order overruled the Kusnick plaintiffs' Objection in its entirety. In the Findings of Fact, the Bankruptcy Court specifically found that the Employee Settlement was the product of arms-length negotiations with the assistance of the Hon. Robert Summerhays, United States Bankruptcy Judge for the Western District of Louisiana, and that the Employee Settlement contained in the Amended Joint Plan "was not a binding contract agreed to by any counsel" but was instead "an offer of compromise and settlement from the Debtors . . . to each of the individual Employees that the individual Employees could accept or decline by opting out." (B'cy Doc. No. 567, at 12 ¶ AA.) The Bankruptcy Court further found that 671 of the Debtors' 774 former Employees (or 86.7%) did not opt out of the Employee Settlement, and 298 of the 401 former Employees who actually returned valid and timely Ballots approved the Employee Settlement.[4] Only 103 employees (the "Opt-Out Employees")

---

[4] Those employees who voted to accept the plan were given a settlement distribution equal to 50% of that employee's estimated Priority WARN Act Claim plus 100% of the employee's Priority PTO/PDO claim, plus 10% of the employee's remaining Employee

affirmatively opted out.[5] The Bankruptcy Court found this to be evidence of "overwhelming support" for the Employee Settlement and that this level of support constituted "a clear endorsement of the reasonableness and fairness of the settlement." (*Id.* at ¶ BB.)[6] Ultimately, the Bankruptcy Court ruled that the Employee Settlement was fair and equitable and in the best interests of the Debtors, the Estates, the Employees, creditors, and parties in interest. (*Id.* at 21 ¶ KK.)

The Findings of Fact also provided that the Bankruptcy Court would retain exclusive jurisdiction over matters arising out of, and related to, the Bankruptcy Case and Adversary Proceedings "to the fullest extent permitted by law," including the jurisdiction to hear and determine adversary proceedings. (Doc. No. 567, at 31 ¶ HHH; B'cy Doc. No. 470, at 41 § 10.1(a).)

Meanwhile, a hearing was conducted on November 13, 2017 in the Kusnick Adversary Proceeding to consider the Kusnick plaintiffs' Motion for Class Certification for the Opt-Out Employees. The Bankruptcy Court entered its Order and Opinion denying the motion on February 9, 2018. (Kusnick A.P. Doc. Nos. 143, 144.) That court found that the remaining 103 Opt-Out Employees were not so numerous that joinder of all members of the putative class was impracticable. And, because the individuals had all been identified, the court concluded that the "regular bankruptcy process for handling large numbers of proofs of claim is sufficient to

Unsecured claim. The amount each employee would get under this formula was calculated and set forth in the voting materials that were mailed to the employees. (*See* Kusnick A.P. Doc. No. 144, at 3.)

[5] According to the defendants, three of the 103 employees who originally opted out of the Employee Settlement subsequently resolved their claims, leaving 100 Opt-Out Employees.

[6] The Bankruptcy Court further noted that, of the 103 employees who opted out of the Employee Settlement, 87 were clients of the law firm representing the Kusnick plaintiffs (and the plaintiffs in this case), while approximately 94% of those employees who were not clients of the same attorneys agreed to the Employee Settlement. (B'cy Doc. No. 567, at 12 ¶ BB.)

address the needs of the remaining claimants." (Kusnick A.P. Doc. No. 144, at 4–5.) The Bankruptcy Court also noted that it intended to "hear as a single proceeding the substantive legal issues as to whether or not the plaintiffs have proper WARN Act claims which would affect all of the purported member class. The court is not going to require each claimant to prove up this legal issue individually." (*Id.* at 5.) The Bankruptcy Court was confident that, once that issue was resolved, the calculation of the amount due to each individual employee would pose little difficulty. The February 9, 2018 Order also reopened the "bar date" for the Opt-Out Employees to file proofs of claim regarding any potential employee claims, if they had no already done so, setting a new deadline of March 12, 2018. (Kusnick A.P. Doc. No. 143, at 1.) On February 23, 2018, the Kusnick plaintiffs sought leave to appeal that Order (Kusnick A.P. Doc. No. 146), which the Louisiana District Court denied on April 27, 2018. (Order, Doc. No. 36, at 20.)

The Bankruptcy Court subsequently set a trial date of August 6, 2018 for the resolution of all issues raised in the Kusnick Adversary Proceeding. The trial order also set deadlines for the filing of "any amended complaint to intervene in the adversary proceeding" (March 26, 2018), discovery (May 25, 2018) and dispositive motions (June 1, 2018). (Kusnick A.P. Doc. No. 149, at 1–2.)

All of the Opt-Out Employees filed one or more proofs of claim prior to the March 12 deadline, but none filed motions to intervene in the Kusnick Adversary Proceeding to assert claims against CCG and MedCare. Nearly all of the proofs of claim assert severance claims and PTO/PDO claims under state law against the Debtors; only four of the Opt-Out Employees, including the two named plaintiffs in the Kusnick Adversary Proceeding (Barbara Kusnick and Rose Delaney) and two others (Jessica Bolin and Mary Beth Talbert), pursue WARN Act claims against the Debtors. And only the named plaintiffs in the Adversary Proceeding, Barbara

Kusnick and Rose Delaney, bring WARN Act claims against MedCare and CCG as well.

On March 26, 2018, the Plan Administrator filed an Omnibus Objection to Proofs of Claim filed by or on behalf of the Employees who Opted-Out of the Approved and Confirmed Employee Settlement to the Amended Joint Plan of Liquidation ("Omnibus Claims Objection"). (B'cy Doc. No. 744.) On March 28, 2018, the Bankruptcy Court consolidated the Omnibus Claims Objection for all purposes, including trial, with the Kusnick Adversary Proceeding. (B'cy Doc. No. 747.)

The original Class Action Complaint initiating this lawsuit (the "Tennessee case") was filed on April 2, 2018.

### C.     Similarity of the Parties

The court must consider the similarity of the parties involved. "The first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical." *Baatz*, 814 F.3d at 790 (citations omitted).

The named plaintiffs in the Kusnick Adversary Proceeding are not plaintiffs in this action, but the named plaintiffs in this case and all the putative class members are also plaintiffs in the Kusnick Adversary Proceeding, having filed proofs of claim in that action seeking recovery against the Debtors. As noted above, the Bankruptcy Court consolidated the Omnibus Objection to the Opt-Out Employees' proofs of claim with the Kusnick Adversary Proceeding for all purposes. While the putative class members are not parties to this case "merely by virtue of being within the putative class," *id.* at 790, "for purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified." *Id.* Thus, it is clear that there is substantial overlap between the plaintiffs in the two cases, even if the sets are not identical.

The Debtors and MedCare and CCG are defendants in the Adversary Proceeding. Only MedCare and CCG are defendants in the Tennessee case. Thus, again, there is clearly substantial overlap, even though the defendants are not identical.

This factor, too, weighs in favor of transfer.

### D.      Similarity of the Issues

With respect to this factor, "as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791. Although the issues do not have to be identical, they must "be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* (internal quotation marks and citation omitted).

The plaintiffs in this case assert WARN Act claims against MedCare and CCG. The bulk of the claims in the Kusnick Adversary Proceeding are state law claims for PTO/PDO and contractual severance against the Debtors, but four plaintiffs also assert WARN Act claims against the Debtors, of whom two also bring WARN Act claims against MedCare and CCG. Resolution of the WARN Act claims against MedCare and CCG would leave essentially nothing to be resolved in this case except damages. Thus, there is substantial overlap of issues, too, even though the named plaintiffs and putative class in the Tennessee case do not assert WARN Act claims in the Adversary Proceeding.

This factor too weighs in favor of transfer.

### E.      Equitable Considerations

Finally, the court must also consider whether equitable concerns weigh against applying the first-to-file rule. *Baatz*, 814 F.3d at 792. Generally, the factors to be considered include "extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* (citation

omitted). "However, deviations from the rule should be the exception, rather than the norm." *Id.*

Again, the first-to-file doctrine is "designed to give courts discretion to decline to exercise jurisdiction in a case whose issues are already substantially implicated in a previously filed action in a court of concurrent jurisdiction." *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 868 (S.D. Ohio 2007). This court has a duty to avoid a ruling that would "entrench upon or inconsistently decide overlapping issues being addressed by another federal court." *Buffalo Wild Wings, Inc. v. BW Rings, LLC*, No. 2:10-cv-335, 2010 WL 4919759, at *3 (S.D. Ohio Nov. 29, 2010).

The plaintiffs themselves acknowledge the possibility of different rulings on the WARN Act claims if the cases proceed in two courts, but they insist that this factor does not preclude retention of the case filed in this court. (Doc. No. 26, at 28.) In *Banus v. Whole Foods Mkt. Grp.*, No. 17-CV-2132, 2018 WL 549272 (N.D. Ohio Jan. 25, 2018), the case cited by the plaintiffs for that proposition, the defendant sought transfer from the Northern District of Ohio to the District of Nevada based on the first-to-file rule. In both cases, the plaintiffs brought suit asserting violations of the Fair Credit Reporting Act ("FCRA") on behalf of a nationwide class and violations of state law on behalf of a subclass of individuals residing in each respective plaintiff's state of residence. The Ohio court denied the motion to transfer, noting that, if the case were transferred or stayed, the court would still have to resolve those state law claims at the conclusion of the first-filed Nevada Case. *Id.* at *2. Largely on that basis, the court found that "the equities favor allowing Plaintiff Banus to continue to litigate her case in the Northern District of Ohio," even though there was a possibility that the defendant "might suffer from inconsistent verdicts . . . if one plaintiff were to prevail and the other does not." *Id.* The rationale of the Ohio court does not apply to this case, however, because the plaintiffs here do not assert

any state law claims, much less any claims under Tennessee state law that would remain to be resolved, even if the case were transferred or stayed.

The plaintiffs also argue that the first-to-file rule only applies between "courts of equal rank," that a bankruptcy court is not equal in rank to a district court, and that any ruling by the bankruptcy court will be subject to review by a district court. In fact, as the defendants point out, precedent exists for transfer from a district court to a bankruptcy court. *See, e.g.*, *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (vacating the order of dismissal entered by the United States District Court for the Western District of Texas on first-to-file grounds and remanding with instructions instead to transfer the case to the United States Bankruptcy Court for the Southern District of Texas); *see also In re Tribune Co.*, 418 B.R. 116, 119 ns. 11, 12 (Bankr. D. Del. 2009) (noting that, although relatively rare, the first-to-file rule may appropriately be applied in a bankruptcy-related context and that, although neither party argued that the bankruptcy court and district court are of "equal rank," the bankruptcy court is technically a "unit of the district court" (citing 28 U.S.C. § 151)). Moreover, this court has not actually been requested to transfer the matter to the Bankruptcy Court but to the United States District Court for the Eastern District of Louisiana. Whether that court chooses to refer the matter to the Bankruptcy Court for consolidation with the Adversary Proceeding is a matter for that court to decide.

The plaintiffs point out that class certification was denied in Louisiana and that the Opt-Out Employees affirmatively chose to bring their WARN Act claims against MedCare and CCG here rather than to intervene to bring them in Louisiana. Now, they assert, "[t]here is no mechanism by which the putative class members' claims would be resolved in the Louisiana bankruptcy court case which they have elected not to join." (Doc. No. 26, at 28.) In other words,

they suggest that the Louisiana Bankruptcy Court has already signaled that it will not allow the Opt-Out Employees to bring their WARN Act claims as a class by denying the Kusnick plaintiffs' Motion to Certify. This court finds that giving the plaintiffs what amounts to a second bite at that apple—even if the plaintiffs here are not technically the same individuals who brought the motion in the Louisiana court—does not constitute a strong equitable basis for denying transfer. Moreover, there is a similar risk that, even if the matter were not transferred, this court would deny certification.

In addition, the plaintiffs suggest that the putative class members will not be permitted to join the case if it is transferred to Louisiana, since the deadline for intervening imposed by the Bankruptcy Court in the Adversary Proceeding has already expired. To be sure, dismissal of the plaintiffs' claims or a refusal to allow the putative class to intervene, based on their failure to intervene in Louisiana, would work great inequity, but the plaintiffs' fears in that regard appear to be speculative. Moreover, even if the case is transferred to the Eastern District of Louisiana and the transferee court denies the now-pending Motion for Class Certification, the general rule is that, "[a]t that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Because this is a different suit, it appears that the Opt-Out Employees should automatically be given another opportunity to intervene or file their own lawsuits.

And any concerns about the running of the statute of limitations appear to be speculative as well. While it is true that the limitations period began to run again after the Louisiana court denied the motion to certify in the Adversary Proceeding, it was tolled again with the filing of the Tennessee case and will remain tolled at least until a decision on the certification motion. *See*

*id.* at 354. Further, the plaintiffs have not provided any information about when the WARN Act statute of limitations expires in this case, whether the limitations period would differ depending on whether Tennessee or Louisiana law is applied, or even which state's limitations period would apply if the Tennessee case were not transferred.[7]

The concerns raised by the plaintiffs do not weigh strongly against transfer. Generally speaking, courts consider inequitable actions by the parties in the first-filed action to determine whether transfer should be denied, even if the relevant factors are otherwise met. Other than the defendants' refusal to stipulate to class certification in the Louisiana case, which was certainly within their legal right, the plaintiffs here point to no inequitable action on the defendants' part— or that of the Kusnick plaintiffs—that would justify not transferring. Rather, the concerns the plaintiffs raise are all matters that the plaintiffs knew might pose a risk when they chose not to intervene in the Kusnick Adversary Proceeding and instead sought to bring a class action in this forum.

In short, the relevant factors all weigh in favor of transfer under the first-to-file rule, and the equities do not militate against transfer. The court finds that judicial consistency, economy, and comity support the transfer.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant the defendants' motion to transfer to the United States District Court for the Eastern District of Louisiana based on the first-to-file rule. (Doc. No. 20.) The defendant's Request for Expedited Consideration will be denied as moot, and the court declines to rule on the Motion for Class Certification, leaving that motion to the

---

[7] The WARN Act does not contain its own statute of limitations, and the Supreme Court has held that, to determine the statute of limitations in any particular WARN Act case, the courts should "look to the state statute most closely analogous to the federal Act." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (internal quotations marks and citation omitted).

transferee court.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge